**James L. TRAVIS, Petitioner-Appellant,**

v.

**CITY OF MEMPHIS CIVIL SERVICE COMMISSION, et al., Defendants-Appellees.**

Court of Appeals of Tennessee, Western Section, at Jackson.

March 19, 1984.

Application for Permission to Appeal Denied by Supreme Court June 11, 1984.

Edward J. McKenney, Jr., Memphis, for petitioner-appellant.

Clifford D. Pierce, Jr., and Paul F. Goodman, Memphis, for defendants-appellees.

NEARN, Presiding Judge, (W.S.).

█ This is an appeal from the order of the Chancellor that affirmed the action of

the City of Memphis Civil Service Commission, which Commission had discharged James L. Travis from his job as a City of Memphis fireman. The matter reaches this Court for review as on common law certiorari. T.C.A. § 27–9–114. Accordingly, unless there is no material evidence to sustain the finding of the Commission or unless the Commission otherwise acted illegally, arbitrarily or capriciously, we must affirm. *Watts v. Civil Service Board,* (1980 Tenn.) 606 S.W.2d 274.

Appellant Travis was employed by the Memphis Fire Department from March, 1979, until June 18, 1982. On June 8, 1982, he was arrested, with his wife, in his home during off-duty hours, and charged with possession of a controlled substance with intent to sell and with unlawfully selling a controlled substance. He was suspended from the Fire Department on that date, pending investigation, for violating the following departmental rules:

Article 3.4 (2) That the employee has been offensive in his conduct toward public charges, fellow employees, or the public.

Article 3.4 (20) That the employee during non-duty hours, has engaged in an employment, activity, or enterprise that is inconsistent, incompatible, or in moral, legal, or technical conflict with his duties, functions, and responsibilities as a City employee.

The administrative investigation determined that Travis did not himself possess or sell the drugs, but that it was his wife who engaged in that activity. He was notified of his termination on June 18, 1982, and violation of Rules §§ 3.4(20) and 3.803(j) (use and possession of illegal drugs or narcotics), was given as the basis of the termination. The criminal charges against him were dismissed by means of a *nolle prosequi.* He appealed to the City of Memphis Civil Service Commission, at which hearing the Fire Department relied solely on violation of § 3.4(20) as the basis for his discharge. The Civil Service Commission upheld his discharge. He then appealed to the Chancery Court of Shelby County, which affirmed the Commission. He timely filed an appeal to this Court.

Without dispute the record shows that an undercover narcotics agent made purchases of controlled substances directly from Jackie Travis, the wife of James L. Travis. These transactions took place in the Travis home. It is undisputed that James L. Travis made no sales to the narcotics agent and the narcotics agent did not pay any funds to Mr. Travis, but all funds were paid directly to Mrs. Travis.

The material factual dispute arises over the conduct of Mr. Travis during the "buys" between the narcotics agent and Mrs. Travis. This factual dispute is found in the conflicting testimony of Mr. Travis and the undercover narcotics agent. Although Mrs. Travis, at the time of the hearing, had offered to plead guilty to criminal charges of possession of a controlled substance and unlawfully selling a controlled substance, she had not then been sentenced. Although present, she did not testify in the civil service hearing.

The narcotics agent testified that he had received information that illegal drugs could be purchased from the Travis'. Therefore, on or about July 15, 1981, he first went to the Travis home and was permitted entry by Mrs. Travis and went with her to the living room where Mr. Travis was seated on the couch about six or seven feet from the agent and Mrs. Travis. The agent made a purchase of a bag of 100 quaaludes and paid Mrs. Travis $250.00. Then, he asked Mrs. Travis "If you're not here can I get them from Larry?"[1] to which she replied "No, he really doesn't get into the business."

Mr. Travis did not dispute any of the testimony of the narcotics agent surrounding the first "buy" except that Mr. Travis testified that he came into the room when Mrs. Travis was engaged in the sale and was not in the room when the narcotics agent entered. This disputed fact is not material in our view.

1. James L. Travis is also referred to as "Larry".

Mr. Travis testified that it was upon witnessing this first "buy" that he learned of his wife's illegal activities. He testified that after the agent left, he verbally chastised his wife and admonished her that such activity on her part could cost him his job. Further, that he felt that she would heed his warning. This testimony is uncontradicted by the proof before the Commission. However, it is also uncorroborated by the wife.

The number of illegal transactions between the wife and the agent at which Mr. Travis was present is disputed. However, it is not disputed that on one other occasion Mr. Travis was present. The agent testified that on one occasion Mr. Travis admitted him into the home. Then, he advised Mrs. Travis that he desired to buy more drugs and she advised that he would have to wait until she went and got the drugs. Mr. Travis then went into the backroom of the house. Mrs. Travis left the home, was gone about thirty minutes and returned with the drugs for which he paid her.

Mr. Travis denied having admitted the agent to the home on any occasion. He testified that after his wife had been indicted he learned that the agent had conducted a "buy" at the home while he was asleep in the bedroom. However, he did admit that on another occasion while he was lying on the couch an illegal drug transaction took place without his participation.

■ Without going further into the matter, there is material proof in the record, although disputed, from which the trier of the facts could find that Larry Travis invited into his home a person known to him to be there for the purpose of engaging in criminal drug activities with his wife, to wit, the purchase of illegal drugs. We hold such a finding could constitute a finding that Larry Travis engaged "in an ... activity during non-duty hours ... that is ... inconsistent (and) incompatible, ... with his duties, functions and responsibilities as a City employee." We think it entirely permissible under the rules for the Civil Service Commission to find that a fireman, while off duty, who invites known drug dealers into his home for the known purpose of engaging in feloneous criminal activities with another is acting incompatibly with his responsibilities as a city fireman.

■ Counsel for appellant argues that under his construction of Article 3.4 (20), it is incumbent upon the Fire Department to prove a nexus between the off duty activity and the efficient operation of the Fire Department. In short, unless the off duty activity interferes with the efficient performance of one's assigned task, it cannot be grounds for discharge. Under such construction of the rule, a fireman could "moonlight" as a "hit" man for the Mafia and, so long as such off duty activities did not interfere with his performance as a fireman, he could not be discharged for such activities. We do not so construe the meaning of Article 3.4(20).

We therefore affirm the Chancellor. Costs of appeal are adjudged against the appellant.

Done at Jackson in the two hundred and eighth year of our Independence and in the one hundred and eighty-ninth year of our Statehood.

TOMLIN, J., and MATHERNE, Special Judge, concur.